**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Isaac Githinji,<br>Petitioner,<br>v.<br>Eric Rokosky,<br>Respondent. | No. CV-26-02341-PHX-AMM (JZB)<br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE ANGELA M. MARTINEZ, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is Petitioner Issac Githinji's "Petition for Writ of Habeas Corpus."[1] (Doc. 1.)

## I. SUMMARY OF CONCLUSIONS.

Petitioner is subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) by the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") and has been detained since October 29, 2025. (Doc. 9 at 1–2.) Petitioner received a bond hearing in which an Immigration Judge ("IJ") denied bond for lack of jurisdiction. (*Id.* at 2.) Petitioner was placed in "asylum-only proceedings" and was ordered removed by the IJ. (*Id.*) Petitioner has appealed the decision to the Board of Immigration Appeals ("BIA") and his appeal remains pending. *See* Exec. Off. for Immigr. Rev., Automated Case Information of Issac Githinji (221-325-354), AUTOMATED CASE INFORMATION SYSTEM

[1] This action was referred to this Court "for further proceedings and a report and recommendation." (Doc. 3 at 3.)

(last visited Jul. 27, 2026), https://acis.eoir.justice.gov/en/caseInformation.

Considering Petitioner's nine-month detention and the liberty interest at stake, the Court concludes that Petitioner's continued detention offends due process as applied in the specific circumstances of this action. Therefore, the Court **recommends** the Petition be **granted**. Specifically, the Court recommends that Petitioner be granted an individualized bond hearing. Furthermore, the Court recommends that, at the bond hearing, the government bears the burden of proving Petitioner is a danger or a flight risk by clear and convincing evidence.

## II. BACKGROUND.

Petitioner is a native of Kenya and entered the United States on March 18, 2024, as a crewmember with a D-1 visa. (Doc. 1 at 3); (doc. 9 at 1.) Petitioner was permitted to remain in the United States no longer than twenty-nine days. (Doc. 9 at 1.) On March 19, 2024, Petitioner was arrested by the Mesa Police Department for Aggravated Assault with a Deadly Weapon and Escape. (*Id.*) On March 26, 2024, the Department of State revoked Petitioner's visa due to the arrest. (*Id.*) On May 15, 2025, Petitioner was convicted for one count of Second-Degree Escape and sentenced to twelve months supervised probation. (*Id.*)

Petitioner attended the first five of his monthly probation appointments without incident. (Doc. 1 at 3.) During his sixth appointment on October 29, 2025, Petitioner encountered ICE officers who served him with an I-200 Warrant for Arrest of Alien and took him into custody. (Doc. 9 at 1–2.) On November 12, 2025, Petitioner was served with a Notice to Appear ("NTA") charging him as a crewmember permitted to remain in the United States only until his ship left port (*Id.* at 2.)

On February 11, 2026, Petitioner received a bond hearing where an IJ denied bond for lack of jurisdiction. (Doc. 9-1 at 12.) Specifically, the IJ stated he could not grant bond because Petitioner "entered on a D1 visa as a crewmember and is only eligible for asylum only proceedings." (*Id.*) Alternatively, the IJ would deny bond "on the ground of danger based upon [Petitioner's] criminal history." (*Id.*) The IJ did not include factual findings or discuss the evidence for why Petitioner was a danger to the community. *See* (*id.*) Petitioner

did not appeal this bond hearing decision. (Doc. 9 at 2.) On February 24, 2026, the IJ dismissed the NTA and granted leave for DHS to file an I-863 to initiate asylum-only proceedings for Petitioner. (Doc. 9-1 at 15.) On February 25, 2026, DHS filed an I-863 to place Petitioner in asylum-only proceedings. (*Id.* at 18.)

On April 27, 2026, Petitioner was ordered removed after the IJ found that Petitioner abandoned his application for relief. (*Id.* at 21.) Petitioner appealed this decision to the BIA on May 12, 2026, and it currently remains pending. *See* Exec. Off. for Immigr. Rev., Automated Case Information of Issac Githinji (221-325-354), AUTOMATED CASE INFORMATION SYSTEM (last visited Jul. 27, 2026), https://acis.eoir.justice.gov/en/caseInformation.

On April 6, 2026, Petitioner filed the instant Petition. (Doc. 1 at 1.) In the Petition, Petitioner seeks an individual bond hearing or "any other form of relief" based on his prolonged detention without a bond hearing on the merits. (*Id.* at 3–4.) Petitioner's claims raise potential violations of the Fifth Amendment's Due Process Clause and the Immigration and Naturalization Act ("INA"). *See generally* (doc. 1.) On April 9, 2026, the Court ordered Respondent to respond to the Petition. (Doc. 3.)

On May 4, 2026, Respondent filed his Response. (Doc. 9.) In his Response, Respondent asserts that: (1) Petitioner failed to exhaust his administrative remedies; (2) Petitioner is not eligible for bond; (3) the Petition is moot; and (4) the Court lacks jurisdiction over a conditions-of-confinement claim. (*Id.* at 2–5.)

## III. 28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional

privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[2] challenging their immigration detention. See *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner only challenges his prolonged civil detention without a bond hearing on the merits, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## IV. DISCUSSION.

### A. Exhaustion of Administrative Remedies.

Respondent argues that the petition should be dismissed because Petitioner failed to exhaust his administrative remedies by not appealing the IJ's bond order. (Doc. 9 at 2–3) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). The Court finds that the prudential exhaustion requirement should be excused because appealing the IJ's bond decision would be futile.

28 U.S.C. § 2411 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citation omitted). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Because exhaustion

---

[2] Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," ... while the word noncitizen, which is synonymous, ... avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

is not required by statute, it is not jurisdictional." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). Where exhaustion of administrative remedies is not jurisdictional, "the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require petitioner to exhaust his administrative remedies before proceeding in court." *Id.* "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted). However, courts may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. *See Laing*, 370 F.3d at 1000–01.

The Court finds that the prudential exhaustion requirement should be waived, even if the *Puga* factors weighed in favor of exhaustion, because requiring Petitioner to appeal the bond decision to the BIA would unreasonably prolong his detention[3] and prove to be futile. Federal courts find that bond order appeals to the BIA are futile where the IJ denied bond based on lack of jurisdiction and the BIA would likely not review the merits of the IJ's bond determination. *See, e.g.*, *Garcia-Merino v. Hernandez*, No. 26-CV-1911, 2026 WL 2137819, at *3 (W.D. Wash. July 24, 2026) (finding that an appeal to the BIA would be futile where the BIA continues to adhere to *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)); *Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1469639, at *4 (W.D. Wash. May 26, 2026) (finding that an appeal to the BIA for a bond hearing would be futile where the IJ denied bond based on lack of jurisdiction and the BIA would likely not reach the merits on appeal); *Jacobo Ramirez v. Noem*, 817 F. Supp. 3d 1037, 1050 (D. Nev. 2025) (finding that exhaustion would be futile where the BIA would likely deny bond

[3] The Western District of Washington noted that in 2024, the average processing time for bond appeals was 204 days. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025).

based on lack of jurisdiction under *Hurtado*).

Similar to the cases above, the IJ denied bond for lack of jurisdiction. (Doc. 9-1 at 12.) For the reasons discussed below, the IJ's conclusion that he had no jurisdiction to grant bond to Petitioner was erroneous. However, the BIA would likely reach the same decision as the IJ because of the government's reliance on *Matter of A-W-*, 25 I. & N. Dec. 45 (BIA 2009). Thus, a bond appeal to the BIA would likely be futile and "exhaustion is not required." *Vasquez-Rodriguez*, 7 F.4th at 896. The Court must now determine what statute authorizes Petitioner's detention.

**B. Detention Authority**

Respondent argues that Petitioner is lawfully detained and is not eligible for bond because he entered the country on a D-1 visa and the IJ lacked jurisdiction to give Petitioner bond. (Doc. 9 at 3–4.) The Court finds that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is eligible for bond.

D-1 visa crewmen are permitted to land temporarily in the United States for up to twenty-nine days. *See* 8 U.S.C. § 1282(a). Noncitizens who are admitted under a D-1 visa are limited in how they challenge their removal. They may only challenge their removal upon an application for asylum or withholding of removal. 8 C.F.R. § 208.2(c)(1)(i)(C). If a D-1 visa crewman makes such a challenge, they are granted "asylum-only" proceedings to determine their removability, and if such relief is denied, the crewman may be removed without further process. *See id.* § 252.2(b).

To support his assertion that Petitioner is not entitled to bond, Respondent cites *Matter of A-W-*, 25 I. & N. Dec. at 47–48, where the BIA held that a noncitizen in "asylum-only" proceedings was not entitled to a bond redetermination hearing. (Doc. 9 at 3.) However, several district courts in the Ninth Circuit have rejected this holding as "not the best reading of the INA."[4] *See Novac v. Bernacke*, No. 2:26-CV-00946-APG-NJK, 2026

[4] Respondent states "[t]he BIA is entitled to deference" under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). (Doc. 9 at 3.) However, *Chevron* was overruled by *Loper Bright Enters. v. Raimondo*, which states that "courts must exercise independent judgment in determining the meaning of statutory provisions." 603 U.S. 369, 394 (2024).

WL 1623191, at *2 n.3 (D. Nev. June 5, 2026); *see also Quispe v. Chestnut*, No. 1:25-CV-2002 CSK, 2026 WL 654577, at *2–3 (E.D. Cal. Mar. 9, 2026) (holding that a noncitizen subject to "asylum-only" hearings was detained pursuant to 8 U.S.C. § 1226(a) which permits the noncitizen to be released on bond); *Oliver Barre v. LaRose*, No. 26-CV-3088 JAO (VET), 2026 WL 1471898, at *2–3 (S.D. Cal. May 26, 2026) (finding that a noncitizen could receive a bond hearing under § 1226(a) even though the noncitizen was referred to an IJ for "asylum-only proceedings"); *Cummins v. Becerra*, No. 1:25-CV-01853-DC-AC (HC), 2025 WL 3724525, at *4 n.1 (E.D. Cal. Dec. 23, 2025) (noting that many courts across the country have held that DHS may delegate authority to an IJ to set bond for noncitizens, even in "asylum-only proceedings").

Respondent even acknowledges that either Petitioner "is subject to mandatory detention without bond as a crewmember who was not placed into Section 240 proceedings, or [he is] subject to detention under 8 U.S.C. § 1226(a), which explicitly permits release on bond." (Doc. 9 at 5.) Respondent cites no provision of the INA requiring mandatory detention of Petitioner. This Court agrees with the findings of other district courts that, even if a petitioner was subject to "asylum-only" proceedings, he can still receive a bond redetermination hearing if he is detained pursuant to § 1226(a). *See Novac*, 2026 WL 1623191, at *2–3; *see also Quispe*, 2026 WL 654577, at *2–3. Section 1226(a) expressly provides for detention of noncitizens before a final order. Respondent does not argue that Petitioner is detained pursuant to § 1225, the statute for noncitizens seeking admission; or § 1226(c), the statute for noncitizens convicted of certain offenses; or § 1231, the statute that applies to noncitizens subject to a final order of removal.[5] *See* (doc. 9.) The Court therefore concludes that Petitioner is detained pursuant to § 1226(a).

**C. Due Process Claim.**

Petitioner challenges his detention without receiving a bond hearing on the merits, which raises a potential violation of the Fifth Amendment's Due Process Clause. *See* (doc.

---

[5] Only "[f]our statutes grant the Government authority to detain noncitizens" pending their removal: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023).

1 at 3.) Respondent claims there was no due process violation because Petitioner already received a bond hearing and there were no due process violations. (Doc. 9 at 3–4.) The Court finds that Petitioner's detention without a bond hearing on the merits violated his due process rights.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation omitted). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Courts analyze procedural due process claims in two steps: (1) the court examines whether a protected liberty interest exists under the Due Process Clause; and (2) the court examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

"The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." *Tinoco v. Noem*, 818 F. Supp. 3d 1141, 1151 (E.D. Cal. 2025) (citing *Zadvydas*, 533 U.S. at 693). Thus, Petitioner has a protected liberty interest, and the Court must determine the procedures necessary to ensure any deprivation of this interest accords with the Constitution.

The Ninth Circuit "regularly applie[s] *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." *Rodrigues Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). However, the Ninth Circuit emphasizes that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206. Under *Mathews*, the Court considers three factors: (1) the private interest affected; (2) the risk of erroneous deprivation; and (3) the government's interest. *Mathews*,

424 U.S. at 335.

***1. The Private Interest Affected.***

First, the Court must evaluate Petitioner's private interest. Petitioner has been detained for approximately nine months. The Ninth Circuit recognizes that a petitioner's private interest in their freedom from prolonged detention "is unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).

However, in evaluating Petitioner's private interest, the Court "cannot simply count his months of detention and leave it at that. [The Court] must also consider the process he received during this time[.]" *Rodriguez Diaz*, 54 F.4th at 1208. Unlike the petitioner in *Rodrguez Diaz*, Petitioner did not receive a bond hearing on the merits. *Id.* at 1207. Respondent claims Petitioner received a bond determination before an IJ, and therefore there was no due process violation. (Doc. 9 at 4–5.) However, this hearing was not a full and fair review. The IJ denied bond based on a finding that he lacked jurisdiction to grant bond release.[6] (Doc. 9-1 at 12.) The Ninth Circuit notes that detentions longer than six months are considered prolonged where "no individualized bond hearings had taken placed at all[.]" *Rodriguez Diaz*, 54 F.4th at 1207. Thus, Petitioner's private interest in being free from prolonged detention of approximately nine months weighs in his favor.

***2. Risk of Erroneous Deprivation.***

Next, the Court considers the risk of erroneous deprivation to Petitioner, and finds

---

[6] Alternatively, the IJ stated he would deny bond "on the ground of danger based on [Petitioner's] criminal history." (Doc. 9-1 at 12.) This too fails to satisfy due process, because he failed to provide any reasoned explanation for the finding of dangerousness. *See Tadevosyan v. Holder*, 743 F.3d 1250, 1253 (9th Cir. 2014) (finding that the BIA abuses its discretion when it fails to provide a reasoned explanation for its actions).

To determine whether a noncitizen presents a significant flight risk or danger which warrants denying bond, an IJ is supposed to weigh nine factors. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Where an IJ does not apply these factors, their decision is an abuse of discretion. *See Garcia-Merion v. Hernandez*, No. 26-CV-1911, 2026 WL 2137819, at *4 (W.D. Wash. July 24, 2026) (holding that an IJ abused his discretion by failing to provide a reasoned explanation for his decision and failing to apply the *Guerra* factors).

The IJ did not discuss any of the evidence or any of the *Guerra* factors in his finding of dangerousness and thus abused his discretion. (Doc. 1-9 at 12). While Petitioner was convicted of Second-Degree Escape, the IJ must properly weigh this conviction along with any other relevant evidence under *Guerra* to find that Petitioner is a danger to the community.

this factor weighs in Petitioner's favor. "The 'risk of an erroneous deprivation of a petitioner's interest is high' where 'he has not received any bond or custody redetermination hearing.'" *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (citing *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020)), *report and recommendation adopted*, No. 1:25-CV-00107-KES-SKO (HC), 2025 WL 1808676 (E.D. Cal. July 1, 2025). Thus, the probable value of a bond hearing is high here because Respondent has "provided virtually no procedural safeguards at all." *Id.* Because Petitioner has been held without a bond hearing for approximately nine months, and it is unclear when detention will end,[7] the risk of erroneous deprivation weighs in favor of granting a bond hearing.

***3. The Government's Interest.***

Finally, the Court weighs the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The Court recognizes that the Government "clearly has a strong interest in preventing aliens from 'remaining in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)).

However, "the key government interest at stake here 'is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing.'" *A.E.*, 2025 WL 1424382, at *5 (quoting *Zagal-Alcaraz v. ICE Field Office Director*, No. 3:19-CV-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020)). Providing a bond hearing would not undercut the Government's interest to remove Petitioner. The purpose of a bond hearing is to determine whether a noncitizen presents a significant flight risk or danger to the community. *See In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006). Considering "'the

[7] The Court acknowledges that the IJ has ordered Petitioner to be removed from the United States to Kenya. (Doc. 9-1 at 21.) However, Respondent does not argue, nor is the Court persuaded, that removal is imminent. The BIA received a case appeal from Petitioner on May 12, 2026, and it is currently pending. *See* Exec. Off. for Immigr. Rev., Automated Case Information of Issac Githinji (221-325-354), AUTOMATED CASE INFORMATION SYSTEM (last visited Jul. 27, 2026), https://acis.eoir.justice.gov/en/caseInformation. Even if Petitioner's appeal is denied, it is possible that the matter will be remanded to the IJ for further findings, and it is possible that Petitioner may pursue further relief.

minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified,' courts have concluded that 'the government's interest is not as weighty as Petitioner's.'" *A.E.*, 2025 WL 1424382, at *5 (citing *Zagal-Alcaraz*, 2020 WL 1862254, at *7). This Court agrees with other district courts' findings on the issue, and finds that Petitioner's interest outweighs the Government's interest.

Overall, the three *Mathews* factors weigh in Petitioner's favor and outweigh the Government's interest in further detention without a bond hearing on whether Petitioner is a significant flight risk or danger to the community. Thus, the Court finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.[8]

**D. Remedy.**

Where a noncitizen's detention under § 1226(a) has become prolonged, and the petitioner has not received a bond hearing on the merits from an IJ, the proper remedy is an individualized bond hearing before a neutral IJ. *See A.E.*, 2025 WL 1424382 at *5 (finding that a bond hearing before an IJ is the appropriate remedy where petitioner suffered a prolonged detention without a bond hearing); *see also Peña v. Marrero*, No. 26-CV-3279 JLS (MSB), 2026 WL 2126861, at *4 (S.D. Cal. July 23, 2026) (finding that a post-deprivation bond hearing under § 1226(a) provides a petitioner with sufficient process).

At the bond hearing, Respondent bears the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh*, 638 F.3d at 1203–05. Additionally, "[i]n the event Petitioner is 'determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,' the [IJ] should consider Petitioner's financial circumstances and alternative conditions of release." *See Liang Ding v. Noem*, No. 1:26-cv-01217-DJC-SCR, 2026 U.S. Dist. LEXIS 58212, at *7 (E.D. Cal. Mar. 19, 2026) (quoting *Hernandez*, 872 F.3d at 1000).

//

[8] Because the Court finds that Petitioner's due process rights were violated, the Court does not address Petitioner's medical condition claims in his Petition. (Doc. 1 at 3.)

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (doc. 1) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that Petitioner be provided an individualized bond hearing within **SEVEN (7) DAYS** if this Report and Recommendation is adopted. These bond hearings shall comply with the procedural requirements set out in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). The government shall bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. Additionally, the IJ should consider Petitioner's financial situation and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017). In the alternative, the government may release Petitioners under appropriate conditions of release.

**IT IS FURTHER RECOMMENDED** that Petitioner **SHALL** be provided with adequate notice prior to the hearing.

**IT IS FURTHER RECOMMENDED** that the government shall file a status report with the Court regarding the bond hearing and whether Petitioner was released within **FOURTEEN (14) DAYS** if this Report and Recommendation is adopted.

//

///

//

///

//

///

//

///

//

///

//

///

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The Parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6, 72. Thereafter, the Parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 10th day of August, 2026.

Honorable John Z. Boyle
United States Magistrate Judge